**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Feb 01 2013, 8:58 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**IRWIN B. LEVIN**
**RICHARD E. SHEVITZ**
**VESS A. MILLER**
Cohen & Malad, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**AMY MILLER**
McGuire Woods LLP
Washington, District of Columbia

**LIBBY GOODKNIGHT**
**LINDA J. COOLEY**
Krieg DeVault LLP
Indianapolis, Indiana

**J. WILLIAM BOLAND**
**BRIAN E. PUMPHREY**
McGuire Woods LLP
Richmond, Viriginia

**MATTHEW R. STRZYNSKI**
Krieg DeVault LLP
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JUDY CANADA, on behalf of herself and all others similarly situated, | ) ) ) | |
| Appellant-Plaintiff, | ) ) | |
| vs. | ) ) | No. 49A05-1203-PL-154 |
| COUNTRYWIDE HOMES LOANS, INC., BANK OF AMERICA, N.A., BAC GP, LLC, and BAC HOME LOANS SERVICES, LP, | ) ) ) ) | |
| Appellees-Defendants. | ) | |

**February 1, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Judy Canada appeals the grant of a Motion to Reconsider filed by Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP, (BAC) f/k/a Countrywide Home Loans Servicing, LP, Countryside Home Loans, Inc., and BAC GP, LLC. (hereinafter Bank). In granting Bank's motion to reconsider, the trial court reaffirmed its dismissal of Count I of Canada's Class Action[1] brought as a Complaint For Fraud on the Court and dismissed Count II, which contained an allegation of Violations of the Indiana Racketeer Influenced and Corrupt Organizations Act.[2] Canada presents the following restated issues for review:

1. Did the trial court err in dismissing the first count of the complaint and later reaffirming that dismissal?

2. Did the trial court err in dismissing the second count of the complaint after the argument on the motion to reconsider?

We affirm.

---

[1] Canada's complaint is captioned as a class action. We note, however, that her case has not been certified as a class action; indeed, we can find no petition filed by Canada requesting such certification. Accordingly, the only parties in this action are Canada and Bank.

[2] Ind. Code Ann. § 35-46-6 *et seq*. (West, Westlaw current through 2012 2nd Reg. Sess.).

Canada purchased a home for which BAC held the mortgage. Canada stopped making mortgage payments and BAC filed a foreclosure complaint in December 2009. Canada failed to file an answer and on March 31, 2010, BAC filed a motion for default judgment after Canada failed to appear in or defend against that action. Contemporaneously with its summary judgment motion, BAC filed the affidavit of Rhonda Weston, an authorized corporate signatory of BAC, setting forth the amount of Canada's debt and the fact of her default. On April 6, 2010, after Canada had filed no pleadings in response to BAC's complaint, the trial court granted BAC's motion and entered default judgment in its favor. On the strength of that judgment, the trial court entered judgment of foreclosure against Canada, which resulted in a sheriff's sale of the subject property.

On March 17, 2011, Canada filed a two-count complaint against Bank alleging: (1) fraud on the court and (2) violations of the Indiana Racketeer Influenced and Corrupt Organizations Act (INRICO), i.e., I.C. § 35-45-6 *et seq.* The gist of Canada's complaint was that Weston's affidavit, which was filed as evidence of Canada's indebtedness in BAC's foreclosure complaint, was submitted by someone who lacked the personal knowledge requirement of Indiana Trial Rule 56(E), thus perpetrating a fraud on the trial court. Canada did not, however, challenge the substantive content of the affidavit regarding her indebtedness and failure to pay which was set forth in Weston's affidavit.

Canada further alleged that when the lenders' electronic system, known as MERS, proved to be poorly run and implemented, lenders including Bank, hired teams of "robo-signers" to sign affidavits when it needed to obtain expedited foreclosure judgments.

3

Designated evidence was offered to show that the robo-signers had no knowledge of the information in the affidavits they signed, and a former robo-signer admitted to signing at least 350 affidavits an hour, estimating that he signed 4,000 affidavits per day. Canada did not challenge the veracity of or amount of her indebtedness, but instead alleged that the person signing the affidavit, Weston, was a robo-signer, who lacked the personal knowledge to prove that information, and alleged that the affidavit tendered in the underlying foreclosure action constituted perjured testimony. Canada argued in support of her claim of damages that the mortgage foreclosure action against her was accelerated due to the robo-signed affidavits, in particular the one signed by Weston, and that she was prematurely evicted from her home, adding to her anticipated expenses.

On May 16, 2011, Bank filed a motion to dismiss Canada's claims under Indiana Trial Rule 12(B)(6). The trial court held a hearing on Bank's motion and granted Bank's motion as to Count I, alleging fraud on the court, but denied the motion as to the INRICO claim. By way of explanation for the ruling, the trial court stated that Canada alleged only a generalized harm, not individualized damage or economic injury, and that Canada's claim was barred by res judicata since Canada could have challenged the contents of the affidavit in the prior foreclosure action. The trial court further explained that Canada had sufficiently stated her INRICO claim because she had alleged the requirements necessary to state such a claim.

Bank filed a motion to reconsider with the trial court challenging the ruling vis-à-vis the INRICO claim. Canada filed her own motion to reconsider the trial court's ruling on the claim alleging damages due to the perpetration of a fraud on the court. After hearing the

argument of counsel, the trial court ordered supplemental briefing of the issues by the parties. As part of her briefing, Canada filed a motion for leave to file an amended complaint. The trial court granted Bank's motion to reconsider and dismissed Canada's complaint in its entirety with prejudice. The trial court's order reaffirmed its prior dismissal of the first count of Canada's complaint concluding that Canada lacked standing to bring the complaint because of her failure to allege sufficient damages to maintain that claim. The trial court further reaffirmed its conclusion that the first count of her complaint was barred by res judicata. The trial court held that Canada's INRICO claim likewise should be dismissed as it was barred by res judicata and that Canada lacked standing to bring that claim. Canada appeals the trial court's order.

1.

Canada initially contends that the trial court erroneously dismissed with prejudice her claim of fraud on the court. She argues that the trial court erred by ruling as it did because in the T.R. 12(B)(6) context, all allegations of the complaint must be accepted as true, and if they had been, her allegation would have survived this challenge. She asserts that the trial court erred by dismissing her claim on the grounds that she failed to state a claim upon which relief could be granted and for lack of standing.

> In reviewing a motion to dismiss granted pursuant to Trial Rule 12(B)(6), our standard of review is well settled. A 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim, not the facts supporting it. Therefore, we view the complaint in the light most favorable to the non-moving party, drawing every reasonable inference in favor of that party. In reviewing a ruling on a motion to dismiss, we stand in the shoes of the trial court and must determine if the trial court erred in its application of the law. The trial court's grant of a motion to

5

dismiss is proper if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. In determining whether any facts will support the claim, we look only to the complaint and may not resort to any other evidence in the record. Further, under notice pleading, a plaintiff need only plead the operative facts involved in the litigation. The plaintiff is required to provide a "clear and concise statement that will put the defendants on notice as to what has taken place and the theory that the plaintiff plans to pursue."

*Godby v. Whitehead*, 837 N.E.2d 146, 149 (Ind. Ct. App. 2005) (internal citations omitted).

Thus, we apply a *de novo* standard of review to Canada's appeal from the trial court's grant of Bank's motion to dismiss for failure to state a claim. *See Stulajter v. Harrah's Ind. Corp.*, 808 N.E.2d 746 (Ind. Ct. App. 2004). Canada's complaint cannot be dismissed under Trial Rule 12(B)(6) unless it appears to a certainty that she would not be entitled to relief under any set of facts. *See Schulz v. State*, 731 N.E.2d 1041 (Ind. Ct. App. 2000), *trans. denied*. Here, the damages claimed by Canada are the costs associated with her "premature eviction" after she defaulted on the mortgage held by Bank.

Upon review of the trial court's dismissal for lack of standing, we apply a *de novo* standard of review. *Id*. The facts alleged in the complaint must be taken as true and only where it appears that under no set of facts could the plaintiff, in this case, Canada, be granted relief is dismissal appropriate. *City of New Haven v. Allen Cnty Bd. of Zoning Appeals*, 694 N.E.2d 306 (Ind. Ct. App. 1998), *trans. denied*.

Standing is a fundamental, threshold, constitutional issue that must be addressed by this, or any, court to determine if it should exercise jurisdiction in the particular case before it. The issue of standing focuses on whether the complaining party is the proper one to invoke the court's power. The standing requirement assures that litigation will be actively and vigorously contested, as plaintiffs must demonstrate a personal stake in the litigation's outcome in addition to showing that they have sustained, or are in immediate danger of

6

sustaining, a direct injury as a result of the defendant's conduct. To establish standing, therefore, a plaintiff must demonstrate a personal stake in the outcome of the lawsuit and that the injury is a result of the defendant's conduct. If properly challenged, when a plaintiff fails to establish standing in the pleadings, the court must dismiss the complaint.

*Alexander v. PSB Lending Corp.*, 800 N.E.2d 984, 989 (Ind. Ct. App. 2003) (internal citations omitted).

Res judicata is the doctrine that prevents the repetitious litigation of disputes that are essentially the same. *French v. French*, 821 N.E.2d 891 (Ind. Ct. App. 2005). Further, res judicata is divided into two branches: claim preclusion and issue preclusion, also referred to as collateral estoppel. *Id.* Bank contends that the trial court's decision may be upheld under either of the branches of res judicata.

The branch of res judicata referred to as claim preclusion has been described as follows:

The doctrine of res judicata bars litigation of a claim after a final judgment has been rendered in a prior action involving the same claim between the same parties or their privies. . . . The following four requirements must be satisfied for a claim to be precluded under the doctrine of res judicata: 1) the former judgment must have been rendered by a court of competent jurisdiction; 2) the former judgment must have been rendered on the merits; 3) the matter now in issue was, or could have been, determined in the prior action; and 4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies.

*Small v. Centocor Inc.*, 731 N.E.2d 22, 26 (Ind. Ct. App. 2000), *trans. denied* (citations omitted).

It is undisputed that the Marion County Superior Court is a court of competent jurisdiction. As a consequence, there is no real dispute that the first requirement has been

met. Additionally, we have held that a default judgment is a judgment on the merits for purposes of analysis under the principle of res judicata. *Eichenberger v. Eichenberger*, 743 N.E.2d 370 (Ind. Ct. App. 2001). As for the parties and their privies, both Canada and Bank, or their privies, were parties to the former action and the present suit. The real dispute involves the requirement that the present claims were or could have been litigated in the prior foreclosure proceeding.

We have stated that "the most critical question for the application of res judicata is whether the present claim was within the issues of the first or whether the claim presents an attempt to split a cause of action or defense." *MicroVote Gen. Corp. v. Ind. Election Comm'n*, 924 N.E.2d 184, 192 (Ind. Ct. App. 2010) (citing *Biggs v. Marsh*, 446 N.E.2d 977, 982 (Ind. Ct. App. 1983)). The identical evidence test is used in this inquiry, that is to say, we examine whether identical evidence will support the issues in both the former and current actions. *Hilliard v. Jacobs*, 957 N.E.2d 1043 (Ind. Ct. App. 2011). By this we mean that a literal interpretation is not to be utilized, but rather, we use a practical interpretation of the test such that even though individual pieces of evidence may differ between the prior and current claims, the same general evidence would be used to adjudicate all of the claims. *Id*.

Applying this test to the present case, we conclude that the trial court did not err. The Weston affidavit was used by the trial court in the uncontested foreclosure action and was also the subject of Canada's claim for damages for fraud on the court. The underlying facts contained within the affidavit were not challenged in the foreclosure action and Canada does not seek to undo the foreclosure or the subsequent sheriff's sale of the property. Instead, she

8

claims that due to the absence of personal knowledge by the purported robo-signer, she was forced to seek alternative housing sooner than anticipated. Canada's INRICO claim is also based on the allegation that the Weston affidavit was not supported by personal knowledge and was part of a systemic acceleration of foreclosure actions at the expense of following procedural safeguards. Because the Weston affidavit could have been, but was not, challenged in the foreclosure action, and was the same general evidence used to adjudicate all claims, we find that the trial court did not err by finding that Canada's complaint was barred by the branch of res judicata known as claim preclusion.

Turning to the branch of res judicata known as issue preclusion or collateral estoppel we are similarly convinced that the trial court did not err. We have previously stated the following about issue preclusion, also known as collateral estoppel:

> Collateral estoppel bars the subsequent litigation of a fact or issue that was necessarily adjudicated in a former lawsuit if the same fact or issue is presented in the subsequent lawsuit. Where collateral estoppel is applicable, the former adjudication will be conclusive in the subsequent action even if the two actions are on different claims. However, the former adjudication will only be conclusive as to those issues that were actually litigated and determined therein. Collateral estoppel does not extend to matters that were not expressly adjudicated and can be inferred only by argument. In determining whether to allow the use of collateral estoppel, the trial court must engage in a two-part analysis: (1) whether the party in the prior action had a full and fair opportunity to litigate the issue and (2) whether it is otherwise unfair to apply collateral estoppel given the facts of the particular case. The factors to be considered by the trial court in deciding whether to apply collateral estoppel include privity, the defendant's incentive to litigate the prior action, and the ability of the plaintiff to have joined the prior action. These factors are not exhaustive but provide a framework for the trial court. A trial court is afforded great deference to disallow the offensive use of collateral estoppel because it is the trial court that will devote the time to try the case.

*Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 704 (Ind. Ct. App. 2005) (internal

9

citations omitted).

Further peeling back the layers of review, collateral estoppel can be divided into two other categories: "offensive" collateral estoppel and "defensive" collateral estoppel. *Eichenberger v. Eichenberger*, 743 N.E.2d 370. Although not relevant to this appeal, offensive collateral estoppel involves the situation where the plaintiff tries to prevent the defendant from litigating an issue previously unsuccessfully litigated in an action involving another party. *Id.* Conversely, and applicable to the resolution of the issue here, defensive collateral estoppel involves the situation where the defendant seeks to prevent the plaintiff from asserting a claim unsuccessfully litigated and lost in a previous action. *Id.* The trial court will allow the application of defensive collateral estoppel after contemplating two considerations: (1) whether the party against whom the judgment is pled had a full and fair opportunity to litigate the issue; and (2) whether it would be unfair under the circumstances of the particular case. *Tofany v. NBS Imaging Sys. Inc.*, 616 N.E.2d 1034 (Ind. 1993).

First, the trial court correctly concluded that Canada had a full and fair opportunity to litigate the issue involving the Weston affidavit. We have held that findings made in default proceedings may collaterally estop a litigant, provided that the defaulted party could have appeared and defended if he had wanted to. *See Small v. Centocor Inc.*, 731 N.E.2d 22. Here, Canada does not dispute the fact that she was properly served with a copy of the foreclosure complaint and summons, yet chose not to appear. Further, Canada does not allege any reason why she failed to appear. She could have challenged the veracity of the Weston affidavit in the foreclosure proceeding, but chose not to appear. Thus, the trial court

10

correctly determined that Canada had a full and fair opportunity to litigate the veracity of the Weston affidavit in the foreclosure proceeding, but chose not to appear. We find no error in the court's evaluation here.

As for the fairness factor, the trial court did not err in concluding that this factor weighed in favor of the Bank. Canada cites to cases from other states to support her argument that fraud on the court is an exception to the doctrine of collateral estoppel, but none of those cases are similar in context to the issues presented here. The facts here reveal that Canada was represented by counsel in a separate bankruptcy proceeding at the time the foreclosure proceeding was ongoing. Canada did not pursue relief via T.R. 60(B) after the judgment against her was entered. Nearly a year passed after the foreclosure proceeding before Canada filed the complaint that is the subject of this appeal, and the complaint was filed while she still had time to seek relief under T.R. 60(B). The trial court's application of defensive collateral estoppel is not unfair to Canada.

Indeed, Canada should have pursued relief under T.R. 60(B)(3) in the foreclosure action instead of filing a separate complaint for damages since the basis for her claim is fraud due to Weston's purported lack of personal knowledge. Indiana Trial Rule 60(B)(3) enables a court to grant relief from an otherwise final judgment for "fraud, misrepresentation, or misconduct" of an adverse party. Because it is worded identically to Federal Rule of Civil Procedure 60(b)(3), Indiana courts routinely look to both Indiana and federal authority to interpret T.R. 60(B)(3). *Stonger v. Sorrell,* 776 N.E.2d 353 (Ind. 2002). Neither the federal nor the Indiana rule defines "fraud, misrepresentation, or misconduct."

11

"A collateral attack on a judgment is an attack made in a proceeding that has an independent purpose other than to impeach or overturn the judgment, although impeaching or overturning the judgment may be necessary to the success of the action." *Ind. Dep't. of Envmtl. Mgmt. v. Conard*, 614 N.E.2d 916, 922 (Ind. 1993). This is precisely what Canada sought to do here, *viz.*, attempt to obtain damages for an alleged fraud occurring in the prior foreclosure action without overturning the foreclosure itself. We have held that if fraud was perpetrated upon a party, the party can relieve himself or herself of that fraud only in a direct proceeding to vacate the judgment. *Hermon v. Jobes,* 209 Ind. 196, 198 N.E. 316, 317 (Ind. 1935). "[A]n action for damages for fraudulently obtaining a judgment cannot be maintained by a party thereto so long as such judgment stands, because a judgment for damages would operate as an impeachment of the first judgment." *Id*. at 317-18 (citing *Schultz v. Schultz et al.*, 136 Ind. 323, 36 N.E. 126 (Ind. 1984)).

In *Shepherd v. Truex*, 823 N.E.2d 320 (Ind. Ct. App. 2005), we outlined the three ways to attack a judgment on the grounds of fraud on the court. Under T.R. 60(B)(3), a movant may base his claim upon any kind of fraud, *e.g.*, intrinsic, extrinsic, or fraud on the court, so long as it is chargeable to an adverse party and has an adverse effect on the moving party. *Shepherd v. Truex*, 823 N.E.2d 320. The motion, however, is generally limited to the court in which the judgment was rendered, shall be made not more than one year after the judgment was entered, and is the preferable way to challenge a judgment on grounds of fraud on the court. *Id*. The second method, which is extremely limited, involves filing an independent action for fraud on the court pursuant to the savings clause of T.R. 60(B),

providing that the rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding or for fraud upon the court. *Id*. Independent actions are usually reserved for situations that do not meet the requirements for a motion made under T.R. 60(B)(3). The third method, also arising out of the savings clause of T.R. 60(B), invokes the inherent power of a court, sua sponte and without time limitation, to set aside its judgment if procured by fraud on the court. *Id*.

In this case, Canada filed her independent action within the one-year limitation of T.R. 60(B)(3) and could have pursued her claim under the provisions of the rule. Indeed, that would have been the preferable way to challenge the judgment on that basis. Although we do not condone the practice of disregarding the personal knowledge requirement of T.R. 56(E), and offer no opinion as to whether that occurred here, we are constrained from offering relief where a litigant could have discovered the purported fraud in the prior proceeding, but chose not to do so. The trial court did not err by finding that Canada's claim was barred by res judicata.

The trial court also found that Canada's complaint should be dismissed for lack of standing because Canada did not suffer any injury. "The standing doctrine constitutes a significant restraint upon the ability of Indiana courts to act as it denies courts any jurisdiction absent actual injury to a party participating in the case. *Jones v. Sullivan*, 703 N.E.2d 1102, 1105 (Ind. Ct. App. 1998).

> Standing focuses generally upon the question whether the complaining party is the proper person to invoke the Court's power. However, more fundamentally, standing is a restraint upon this Court's exercise of its jurisdiction in that we cannot proceed where there is no demonstrable injury to the complainant

before us.

*Pence v. State*, 652 N.E.2d 486, 488 (Ind. 1995). A plaintiff must show that he or she has sustained, or is in immediate danger of sustaining, some direct injury as a result of the conduct at issue in order to establish standing. *Jones v. Sullivan*, 703 N.E.2d 1102.

In this case Canada premised her injury claim in terms of the accelerated pace of the foreclosure proceedings and claimed resulting unspecified monetary damages. Canada claimed that she was deprived of the use, value, rent, and income, but admits that she resided in the property approximately eight months payment-free. Moreover, Canada has failed to link her claimed damages to the Weston affidavit. It is uncontradicted that Canada defaulted on her loan in the manner set forth in the affidavit including the amount due. Canada has not established that she has suffered monetary damages such that she has established standing.

Additionally, the length of time of the foreclosure proceeding cannot be reasonably interpreted to constitute an element of damage to Canada. Canada speculates that her foreclosure proceeding would have taken more time without a purportedly perjured affidavit, yet offers no evidence in support of that speculation. She does not challenge the factual allegations of the affidavit, nor does she argue that the foreclosure proceeding occurred in a manner in violation of the trial rules. Likewise, we are unpersuaded that Canada was denied an opportunity to redeem her property. That argument was not made before and is waived now on appeal. *See Babinchak v. Town of Chesterton*, 598 N.E.2d 1099 (Ind. Ct. App. 1992) (we will not consider arguments raised for the first time on appeal). Regardless, redemption is a procedure that occurs after the entry of judgment in a foreclosure proceeding. Ind. Code

14

Ann. § 32-29-7-7 (West, Westlaw current through 2012 2nd Reg. Sess.).

Canada has not established that the alleged fraud on the court improperly led the trial court to enter the foreclosure judgment. She has not denied the amount of the debt or the existence of the promissory note securing the mortgage. Again, her allegation centers on the trial court's entry of judgment sooner than she anticipated. This is not the level of egregiousness required to establish her claim and it properly failed.

In sum, Canada has failed to establish that the trial court erred by concluding that her claim for fraud on the court was barred by res judicata or that she lacked standing to bring her complaint. We affirm the judgment of the trial court in this regard.

2.

After considering Bank's motion to reconsider the trial court concluded that Canada's INRICO claim should be dismissed as well. In order to support her claim, Canada was required to allege a "pattern of racketeering activity." I.C. §35-45-6-2 (West, Westlaw current through 2012 2nd Reg. Sess.). The statutory definition of that term describes the conduct as "engaging in at least two (2) incidents of racketeering activity" that are interrelated. I.C. 35-45-6-1(d) (West, Westlaw current through 2012 2nd Reg. Sess.). We have held that the fundamental element of an INRICO claim is that a defendant has committed "two predicate acts*." AGS Capital Corp., Inc. v. Product Action Int'l, LLC*, 884 N.E.2d 294, 308 (Ind. Ct. App. 2008). We agree with the trial court's conclusion that Canada has failed to establish her claim, because at best, she has established only one predicate act, *viz*, the Weston affidavit.

15

Any information regarding additional predicate acts she alleges involve members of a class action that has not been certified, nor has permission for certification been sought. Canada has failed to specify with particularity how those purported class members suffered from Bank's alleged racketeering activity. Here, Canada alleges a pattern of fraud in the form of robo-signed affidavits. Our Supreme Court has held, however, that those circumstances constituting fraud include "the time, the place, the substance of the false representations, the facts misrepresented, and the identification of what was procured by fraud." *Continental Basketball Ass'n, Inc., v. Ellenstein Enterprises, Inc.*, 669 N.E.2d 134, 138 (Ind. 1996) (quoting *Dutton v. Int'l Harvester Co.*, 504 N.E.2d 313, 318 (Ind. Ct. App. 1987), *trans. denied*.). Canada has failed to do so here.

Additionally, because Canada's claim challenging the veracity of the Weston affidavit is barred by res judicata, that affidavit cannot be used to establish a predicate act. The trial court correctly made this observation in dismissing this count of Canada's complaint. Consequently, we agree with the trial court that Canada's INRICO claim must be dismissed.

Judgment affirmed.

BROWN, J., and PYLE, J., concur.

16